NESBITT, Judge.
A jury found Dwayne Roberts guilty of attempted second-degree murder of a law enforcement officer and the unlawful possession of a firearm while engaged in a criminal offense. The trial court, on November 19, 1990, sentenced Roberts to life with a 25-year minimum mandatory on the attempted murder count and a concurrent 15 years on the possession of a firearm count. Roberts filed a motion to correct illegal sentence on March 1, 1996, citing to State v. Iacovone, 660 So.2d 1371 (Fla.1995). He argued that because sections 784.07(3) and 775.0825, Florida Statutes (1989) applied only to first-degree murder, his sentence should be vacated. See Newbold v. State, 667 So.2d 996 (Fla. 3d DCA 1996). Thereafter, the state filed a notice of its intent to seek an enhanced penalty on resentencing, pursuant to section 775.084, Florida Statutes (1989).
At the resentencing hearing which followed, the prosecutor reminded the judge that this case involved the shooting, with a semi-automatic pistol, of two FDLE agents. The state advised the trial court that it had filed a notice of enhancement back in 1989. Therefore, the state asked the court to sentence Roberts as a habitual violent offender. In support of this request, the prosecutor pointed out, and the defense agreed, that a fingerprint technician had been at Roberts’ first sentencing, had finger-printed Roberts, and had compared his fingerprint to the certified copies of judgments from Broward and Dade, and that defense counsel had questioned the technician and stipulated to his testimony.
The prosecutor maintained that the state had not asked for a habitual offender sentence or departure sentence at Roberts’ original sentencing because both options would have led to a sentence which was less than the mandatory life with a 25-year minimum. The defense argued that since the state never pressed the notice, it had waived it, and therefore, the trial court should sentence Roberts under the guidelines. The state responded that it would have been ridiculous to ask the court at the original sentencing hearing to sentence Roberts to anything other than the mandatory sentence of life with a 25-year minimum pursuant to section 775.0825, because that had been the higher, as well as mandatory, sentence.
The prosecutor identified: 1) the state’s Exhibit 2 was a certified copy of defendant’s Broward convictions, which reflected that Roberts had pled guilty to carrying a concealed firearm, grand theft, and possession of cocaine in 1989; 2) the state’s Exhibit 1 was a certified copy of defendant’s youthful offender sentence in 1987, which was for two counts of armed robbery, two counts of grand theft, and possession of a firearm; 3) the state’s Exhibit 3 was defendant’s fingerprints which had been taken that morning; and 4) the state’s Exhibit 4 was the statement from the clemency board which indicated that Roberts had not been pardoned. The state then advised the court that attempted second-degree murder with a firearm was a first-degree felony.
The trial court found that defendant met the requirements for a habitual violent offender sentence. Over defense objection, the trial court entered an order vacating defendant’s previous sentence and making the requisite findings pursuant to section 775.084. Defendant was sentenced to 25 years as a habitual violent felony offender, with a 15-year minimum mandatory. Roberts maintains that although a notice to enhance had been filed, the notice had never been raised by the state nor acted upon by the court. Therefore, he argues, he could not be resen-tenced as a habitual offender when he was not sentenced as such originally. We disagree.
As stated above, defendant was originally facing a mandatory, non-discretionary sentence of life with a 25-year minimum mandatory pursuant to sections 784.07(3) and 775.0825. For the trial court to have classified defendant as a habitual violent offender at that time would have been a meaningless gesture, constituting mere surplusage. The trial court had no choice but to give Roberts the mandatory sentence. We are persuaded by the state’s argument that this situation is analogous to one where the trial court be *1291 lieves that what it is imposing is a lawful sentence, or where it does not recognize that the sentence imposed constitutes a departure sentence. In either of those situations, Florida courts have held that the trial court, on remand, may again impose a departure sentence if valid written reasons are provided. State v. Betancourt, 552 So.2d 1107 (Fla.1989); Madraso v. State, 634 So.2d 749, 750 (Fla. 3d DCA), review denied, 645 So.2d 453 (Fla.1994); Mills v. State, 623 So.2d 840, 842 (Fla. 5th DCA 1993).
Distinguishable is Grimes v. State, 616 So.2d 996, 997-98 (Fla. 1st DCA 1992), review dismissed, 617 So.2d 319 (Fla.1993). Therein, the trial court expressly elected not to sentence defendant as a habitual offender because it was not sure whether a habitual offender punishment was available in the case of a first-degree felony punishable by life. The first district concluded that such an election constituted a determination that would not be revisited without violating the prohibition against double jeopardy. We need not address the validity of this argument to resolve the instant question, because the two cases are critically dissimilar. The trial court in the instant case never directly considered whether defendant should be classified as a habitual violent felony offender at the 1990 sentencing hearing, and never expressly elected not to sentence defendant as a habitual violent offender. See Harris v. State, 645 So.2d 386, 388 (Fla.l994)(“The double jeopardy considerations that bar re-prosecution after an acquittal do not prohibit review of a sentence... .The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner” (citations omitted)).
To clarify, the record clearly shows that the state filed the notice of enhancement in 1989 before trial, not knowing whether the defendant would be convicted of the offenses charged. When the time for sentencing came, the prosecutor recognized the minimum mandatory sentence was greater than the habitual offender sentence. Years later when the minimum mandatory sentence for the defendant failed, which failure could hardly been anticipated at the time of the original sentence, defendant could be habitu-alized. The trial court specifically found the state had not waived the notice requirement.
In light of the evidence presented on re-sentencing and because notice of the state’s intent to seek an habitual offender sentence had been filed on the original sentencing, enough was done to allow the habitualization on resentencing to stand. To conclude otherwise would permit the defendant to be the beneficiary of an advantage to which he was not entitled. There was nothing unjust or surprising in the trial court’s action.
Accordingly, the order under review is affirmed.